COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-093-CR

DOMETRIUS BRAZELTON   APPELLANT

V.

THE STATE OF TEXAS         STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------ 

I.  Introduction

A jury convicted Appellant Dometrius Brazelton of murder and assessed his punishment at forty years’ confinement.  In two issues, Brazelton argues that the trial court committed reversible error by denying him wide latitude in his cross-examination of a punishment phase witness and by denying the motion for mistrial he made during the punishment phase of trial.  We will affirm.  

II. 
Factual and Procedural Background

On April 15, 2004, Brazelton shot and killed Eric Hill, Sr. in the alleyway of an apartment complex.  As a result, the State charged and the grand jury indicted Brazelton for murder.  A jury found Brazelton guilty of murder.  

At the punishment phase of trial, Adella Greer testified that she knew Brazelton because they formerly attended the same church.  She also testified that Brazelton broke into her apartment and assaulted her in 2001.  Brazelton was convicted of misdemeanor assault for his assault on Greer and stipulated that he had been convicted of misdemeanor assault on February 21, 2001.  Greer testified that she no longer attended the church where she had met Brazelton.  Specifically, Greer testified:

Q: The church that you attended, do you continue attending that church?

A: No, I stopped going a long time ago.

The State did not ask any additional questions after this answer by Greer. During his cross-examination of Greer, Brazelton sought to question her  about her reasons for leaving her church, and claimed that the State had opened the door to this line of questioning by asking the question listed above.  Brazelton theorized that Greer had been asked to leave the church because she was having illicit relationships with married men within her church.  Brazelton claimed that, as a fellow church member, he had counseled her not to engage in these relationships and that, in retaliation, she had fabricated the assault charges against him.  

The trial court permitted Brazelton to take Greer on voir dire outside the presence of the jury.  On voir dire, Greer denied having these alleged affairs.  After hearing Greer’s testimony on voir dire and the State’s relevance objections, the trial court ruled that it would not permit cross-examination concerning any alleged relationships with married church members.    

During the punishment phase, Brazelton offered the testimony of Leonard McEachern, Brazelton’s roommate, to refute Greer’s testimony.  McEachern testified that Greer was known as a dishonest person.

After hearing all of the punishment phase evidence, the jury assessed Brazelton’s punishment at forty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  Brazelton timely filed his notice of appeal, and this appeal followed.  

III.
 Limitation of Cross-Examination

In his first issue, Brazelton argues that the trial court committed reversible constitutional error and impinged upon his Sixth Amendment Confrontation Clause rights when it denied him wide latitude to challenge Greer’s credibility in his punishment-phase cross-examination of her.  The State counters that the trial court properly limited Greer’s cross-examination to relevant matters, that Brazelton’s Confrontation Clause rights were not stifled, and that, in any event,  any error was harmless. 
See
 
Tex. R. Evid
. 608(b); 
Tex. R. App. P.
 44.2. 

The Sixth Amendment guarantees a defendant the right to confront the witnesses against him or her.  U.S. Const. amend. VI; 
Pointer v. Texas
, 380 U.S. 400, 400-01, 85 S. Ct. 1065, 1065 (1965).  A primary interest secured within that right is the right of cross-examination.  
Carroll v. State
, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).  That right is violated when a trial court improperly limits appropriate cross-examination. 
Id.
  

Although the right to cross-examine a testifying witness extends to any matter that could reflect on the witness's credibility, including impeaching the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility, the trial court may limit such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant.  
See, e.g., Pope v. State
, 161 S.W.3d 114, 123 (Tex. App.—Fort Worth 2004) (citing numerous authorities), 
aff’d
, 207 S.W.3d 352 (Tex. Crim. App. 2006), 
cert. denied
, 127 S. Ct. 2053 (2007)
.

Those limitations are permissible because the Sixth Amendment merely “guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.”  
Delaware v. Van Arsdall
, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); 
see also Carpenter v. State
, 979 S.W.2d 633, 634-35 (Tex. Crim. App. 1998)
.  Thus, cross-examination may be limited without running afoul of the Sixth Amendment if it is not calculated to reveal bias or motive to testify falsely.  
Carroll
, 916 S.W.2d at 497-98
.

Here, Brazelton cross-examined Greer in an effort to show that Greer supposedly left her church because she had been having affairs with married men and that, because Brazelton had rebuked her for her conduct, she had lied about his assault on her.  But such a showing is simply not evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting Greer’s credibility.  
See, e.g., Pope
, 161 S.W.3d at 123.  In her testimony before the jury, Greer did not give any reason for leaving the church.  And, in light of Brazelton’s stipulation as to his prior conviction for assaulting Greer, the fact of the assault was established; no bias, interest, or prejudice by Greer would seem exposed by delving into her alleged motive for bringing charges that Brazelton stipulated to.  
Accord Smith v. State
, 158 S.W.3d 463, 465 (Tex. Crim. App. 2005) (recognizing that when a defendant stipulates to a prior conviction, he cannot later argue the falsity of that conviction).  And finally, Brazelton was able to put Greer’s credibility at issue during his direct, punishment-phase examination of McEachern, Brazelton’s roommate.  As previously mentioned, McEachern testified that Greer’s reputation for being truthful was bad.

Under these circumstances and after hearing Greer’s testimony on voir dire, we hold that the trial court did not abuse its discretion by limiting Brazelton’s punishment-phase cross-examination of Greer to prevent him from delving into the alleged reasons that she left her former church
(footnote: 2) and that the trial court’s limitation on Brazelton’s cross-examination of Greer did not impermissibly restrict Brazelton’s Confrontation Clause rights.  
See Delamora
 
v
. 
State
, 128 S.W.3d 344, 365 (Tex. App.–Austin 2004, pet. ref’d).  We 
hold that the trial court’s ruling at least lies within the zone of reasonable disagreement.  We overrule Brazelton’s first issue.

IV. 
Motion for Mistrial

In his second issue, Brazelton complains that the trial court erred by denying his motion for mistrial after the State engaged, in bad faith, in an impermissible, prejudicial line of punishment-phase questioning directed towards McEachern.

In reviewing a trial court’s ruling on a motion for mistrial, we apply an abuse of discretion standard and will uphold the ruling if it is within the zone of reasonable disagreement. 
Wead v. State
, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  Mistrials are required only when improper evidence is offered to clearly inflame the minds of the jury and is of such a degree as to suggest the impossibility of withdrawing the impression from the minds of the jury.  
Hinojosa v. State
, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).  When making this determination, we must look to the facts and circumstances of the case.  
Id.
 (citing 
Hernandez v. State
, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), 
cert. denied
, 500 U.S. 960 (1991)).

When a trial court instructs the jury to disregard certain testimony, we presume that the jury followed the instruction and did not consider the improper evidence during deliberations.  
See Colburn v. State
, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); 
Waldo v. State
, 746 S.W.2d 750, 752-54 (Tex. Crim. App. 1988) (jury presumed to follow instructions to disregard improper evidence).  Prompt curative instructions to disregard are ordinarily effective and will cure error regarding prior offenses.  
See Nobles v. State
, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); 
see Ovalle v. State
, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)
. 

Brazelton contends that McEachern was his most critical punishment phase witness because he had personal knowledge of Greer’s reputation within the community.  On direct examination, McEachern testified that Greer’s reputation for honesty within her church community was bad.  During cross-examination, the State asked McEachern if he had ever been convicted of a felony or theft.  Brazelton’s attorney promptly objected and the jury was excused.  After the jury was excused, the State took McEachern on voir dire and established that McEachern had been placed on deferred adjudication approximately twenty years earlier, but had since had no other contact with law enforcement.  

Following the State’s voir dire of McEachern, Brazelton’s trial counsel moved for a mistrial.  The trial court denied the motion.  After the jury was reseated, the trial judge proceeded to instruct the jury to disregard the previous question and partial answer.  In his instruction, the trial judge had the question read back to the jury and then stated, “I’m ordering you to disregard the question and I’m ordering you to disregard the partial answer and not consider it for any purpose in evaluating the weight or the credibility of the testimony of this witness.  It’s not allowed.  It plays no part in this trial. Does everyone understand that?”  Several of the jurors verbally acknowledged that they understood.  

After reviewing the record, we hold that a mistrial was not required because the trial court gave prompt curative instructions to disregard the question and partial response, and because the question was not of such a degree as to suggest the impossibility of withdrawing any impression from the minds of the jury.
 See Hinojosa
, 4 S.W.3d at 253; 
Nobles
, 843 S.W.2d at 514.  We therefore overrule Brazelton’s second issue.  

V. 
Conclusion

Having overruled both of Brazelton’s issues, we affirm the judgment of the trial court.  
 
 

PER CURIAM

PANEL F
: WALKER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: July 12, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
To the extent that Brazelton’s desired line of punishment-phase cross-examination of Greer was an effort to establish that she purportedly had affairs with married men, that line of questioning is prohibited.  
See
 
Tex. R. Evid.  608
(b) (providing that “[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the witness’ credibility, other than conviction of crime as provided by Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence”).